Moses Holbrook *vs.* Frank G. Nesbitt & another.

Suffolk.    December 4, 1894. — February 28, 1895.

Present: Field, C. J., Allen, Holmes, Knowlton, & Lathrop, JJ.

*Equity — Trade Name — Injunction — Breach of Agreement — Multifariousness.*

The plaintiff in a suit in equity against A. and B. was formerly in partnership with A., carrying on a law and collection business under the name of " F. & C.," each owning a one-half interest in the firm. This business had been carried on under that name for twenty years, and for the last twelve years by the plaintiff and A. The plaintiff conveyed to A. his one-half interest " in the business of law and collections of the firm of F. & C.," except as stated in an instrument of even date signed by the two, reserving to himself " the name ' F. & C.,' excepting as agreed in said " instrument. In that instrument A. conveyed to the plaintiff " all his right and interest in the name F. & C., with all the printed stationery and envelopes now on hand printed in that name "; and reserved " the right only to advertise he was lately of said firm, and to indorse checks in that name for collection or deposit only that pertain to business now in the hands of F. & C. or their correspondents, and to collect bills now due said firm "; and agreed to vacate the office occupied by the firm by a day named, and assign his interest in the lease to the plaintiff, who assumed the rent on the lease. The instrument further provided that all cases pending in court should remain in the plaintiff's charge, " subject to the right of the clients." Immediately after this agreement was signed, A. took an office in the same building in which the business of F. & C. had been carried on, and entered into partnership with B., an attorney at law, who had formerly been employed by F. & C. A. and B. then sent to the former clients and correspondents of F. & C. circulars announcing the dissolution of the partnership between the plaintiff and A., and the formation of the new firm of A. and B., who, "having purchased the entire interest of" the plaintiff "in the business of F. & C., . . . will continue to carry on the same business " at the place stated; and containing the following : " All inquiries relating to old matters formerly in the hands of F. & C. should be made of, and all communications addressed to," A. and B. They also sent to the correspondents of F. & C. a notice, as follows : " In all matters of business of F. & C. now in your hands, make all checks, drafts, etc. payable to the order of " A. and B. " only, and address all communications and correspondence to " A. and B. This was signed " F. & C." *Held,* that these facts did not entitle the plaintiff to an injunction against A. and B.

A bill in equity to restrain the doing of certain acts, which does not allege that the defendant was continuing to do such acts when the bill was filed, shows no ground for an injunction.

A person who was formerly in the employ of a firm, and who engages in a similar business, displaying upon his office a sign containing underneath his name the words "late of " the firm, will not be enjoined, if the sign is not painted in such a manner as to be likely to mislead the public.

The plaintiff in a suit in equity against A. and B. was formerly in partnership with

A., carrying on a law and collection business under the name of "F. & C.," each owning a one-half interest in the firm. The plaintiff conveyed to A. the former's one-half interest "in the business of law and collections of the firm of F. & C.", except as stated in an instrument of even date signed by the two, reserving to himself "the name 'F. & C.,' excepting as agreed in said" instrument. In that instrument, A. conveyed to the plaintiff "all his right and interest in the name F. & C.," and reserved "the right only to advertise he was lately of said firm, and to indorse checks in that name for collection or deposit only that pertain to business now in the hands of F. & C. or their correspondents, and to collect bills now due said firm"; and agreed to vacate the office occupied by the firm by a day named, and assign his interest in the lease to the plaintiff, who retained the office. The instrument further provided that all cases pending in court should remain in the plaintiff's charge, "subject to the right of the clients." A. immediately took another office in the same building, and entered into partnership with B., an attorney at law, who had formerly been employed by F. & C. *Held*, that A. and B. had no right to advertise that they were the successors of F. & C. *Held, also*, that it was a violation of the agreement between the plaintiff and A. for the latter or his firm to solicit clients who had pending cases to withdraw them from the plaintiff's control, and to turn over the management of them to B.

A bill in equity by A. to restrain B. and C. from doing certain acts as partners, in violation of a written agreement executed by A. and B. upon the dissolution of a partnership existing between them, is not multifarious.

LATHROP, J. This is a bill in equity against Frank G. Nesbitt and William L. Quimby, to restrain them from doing certain acts, for an account, and for damages. In the Superior Court the defendants demurred to the bill for multifariousness, and for want of equity. The court sustained the demurrer, and dismissed the bill; and the case comes before us on the plaintiff's appeal.

In 1893 the plaintiff and the defendant Nesbitt were partners carrying on a law and collection business under the name of Farnsworth and Conant, each owning a one-half interest in the firm. This name, it must be assumed, was of value, as the business had been carried on since 1873, although the plaintiff and Nesbitt did not acquire a right to use it until 1881.

On September 9, 1893, the plaintiff conveyed to Nesbitt his one-half interest "in the business of law and collections of the firm of Farnsworth and Conant," except as stated in an instrument of even date signed by the two, reserving to himself, however, "the name 'Farnsworth and Conant,' excepting as agreed in said" instrument. There are other provisions in this instrument which will be referred to hereafter.

In the instrument referred to, Nesbitt conveyed to the plaintiff

" all his right and interest in the name Farnsworth and Conant, with all the printed stationery and envelopes now on hand printed in that name, and rubber stamps in that name, except the check-books and draft-books now in the office and reference cards. Said Nesbitt reserves the right only to advertise he was lately of said firm, and to indorse checks in that name for collection or deposit only that pertain to business now in the hands of Farnsworth and Conant or their correspondents, and to collect bills now due said firm. Said Nesbitt to leave the telephone closet intact and vacate the office by September 16, 1893, and assign his interest in the lease to said " plaintiff, who assumed the rent on the lease. The instrument further provided as follows : " It is also mutually agreed that all pending cases in any court within the State of Massachusetts, including those in the United States Court in said Massachusetts, to remain under the charge of said Moses Holbrook in the same manner as heretofore, subject to the right of the clients, and that the name of W. L. Quimby, when the same now appears, to remain as at present, but the executions to be in charge of said Moses Holbrook, and he to have such assistance from said Quimby as may be agreed upon by said Holbrook and Quimby in the trial or enforcement of the same, and any such assistance as may be rendered by said W. L. Quimby to be without extra charge, and when such cases are wound up the proceeds to be turned over to the clients, and the net proceeds of costs and charges, after deducting disbursements necessary on enforcement or trial, to be divided equally between said Moses Holbrook and Frank G. Nesbitt." Cash on hand was to be divided equally, and bills due officers to be paid equally. Nesbitt assumed the other debts and liabilities of the firm.

The effect of these instruments was, in substance, that the plaintiff retained the office and the firm name and the conduct of cases pending in court, while Nesbitt was to have charge of the other business. He was at liberty, as there was no covenant to the contrary, to engage in the same or any other kind of business.

Immediately after the signing of the agreement Nesbitt took offices in the same building in which the business of Farnsworth and Conant had been carried on, and entered into partnership with

Quimby, who sufficiently appears from the bill and exhibits to be an attorney at law, who before that time had been employed by Farnsworth and Conant.

1. The first ground of complaint is that the defendants sent circulars to the former clients and correspondents of Farnsworth and Conant, in which they falsely and fraudulently claimed and led the clients and correspondents to believe that they were the successors of Farnsworth and Conant, and sent a large number of such circulars in envelopes which belonged to the plaintiff, and that had the card " Farnsworth and Conant " on the outside, for the purpose of. misleading the parties to whom the same were sent, without any right or authority from the plaintiff. Copies of this circular and envelope are annexed to the bill.

An examination of the circular does not, however, in our opinion, sustain the argumentative allegation of the bill that the defendants claimed therein to be the successors of Farnsworth and Conant. It is headed, " Offices of Quimby and Nesbitt." It sets forth the fact that the partnership existing between M. Holbrook and Frank G. Nesbitt, under the name of Farnsworth and Conant, is dissolved. It then recites the formation of the new firm of Quimby and Nesbitt, and states that, " having pur-chased the entire interest of said Holbrook in the business of Farnsworth and Conant, including all books, papers, documents, and assets of every kind and description and wherever located and being, excepting that said Holbrook retains his appearance in cases in court in this Commonwealth not yet gone to judg-ment unless otherwise requested by clients, the said Quimby and Nesbitt will, on and after September 16, 1893, continue to carry on the same business, in all its branches and details, at rooms 309 and 310 Sears Building, Boston, retaining all but one of the old employees of Farnsworth and Conant. . . . All inquiries re-lating to old matters formerly in the hands of Farnsworth and Conant should be made of, and all communications addressed to, ' Quimby and Nesbitt, Boston.' "

On the envelope complained of the following printed words appeared in one corner: " Return in five days to Farnsworth and Conant, Sears Building, Boston, Mass." There is no allegation in the bill that the use of such an envelope continues, and there is therefore no cause shown for an injunction on this ground.

The plaintiff, however, contends that the words will "continue to carry on the same business" state in most unmistakable terms that the defendants are the successors of Farnsworth and Conant. But we are unable to take this view of the matter. With the exception stated in the circular, Nesbitt had the entire charge of the business of Farnsworth and Conant as it existed at the time the instruments were signed in 1893, and had, by the terms of the agreement, the right to carry it on. To say that he represented that his new firm was the successor of Farnsworth and Conant is something that we are unable to read into the circular.

2. The next contention is that the defendants had no right to send out to the correspondents of Farnsworth and Conant a notice on September 16, 1893, which reads as follows: "In all matters of business of Farnsworth and Conant now in your hands, make all checks, drafts, etc. payable to the order of Quimby and Nesbitt only, and address all communications and correspondence to Quimby and Nesbitt, Boston." This was signed "Farnsworth and Conant." This does not relate to new matter at all, but to matters then in the hands of the correspondents. By the express terms of the agreement Nesbitt had the right to use the name of Farnsworth and Conant in the collection of bills due, and in the indorsement of checks for collection or deposit that pertained to business in the hands of Farnsworth and Conant or their correspondents. We see no reason why he might not, as an incident of this, notify the correspondents of the old firm in the manner complained of.

3. The bill also alleges that the defendants are making an unwarranted use of the name of Farnsworth and Conant by displaying a painted sign upon their office in the following form: "Quimby and Nesbitt," underneath which names are the words "Late of Farnsworth and Conant," and still lower down the names in full of the two partners. This, so far as Nesbitt is concerned, is a right which he expressly reserved. As to Quimby, the bill alleges as follows: "That the said respondent Quimby has no right whatever to represent that he ever was of the firm of Farnsworth and Conant; that said Quimby was only an employee of the firm of Farnsworth and Conant, and has not now, and never had, any right to represent himself other-

wise." After Quimby left the firm of Farnsworth and Conant, he had undoubtedly a right to represent that he was formerly in the service of the firm. This right of a former partner and of a former employee is settled in many cases. The only ground for the interference of a court of chancery in such a case is where the sign is painted in such a manner as to be likely to mislead the public, as in *Hookham* v. *Pottage*, L. R. 8 Ch. 91, where the defendant, who had been a partner with the plaintiff under the firm name of Hookham and Pottage, after the dissolution of the firm by a judicial decree which gave the business of the firm to the plaintiff, set up in the same business, and painted over the door the words, " S. Pottage, from Hookham and Pottage." The words " from " and " and " were in small capitals, and the other words in large capitals. Sir W. M. James, L. J. recognized the rule which we have stated, and granted an injunction solely on the ground that the mode in which the defendant had placed the names over the door was calculated to deceive the public. See also *Clark* v. *Leach*, 32 Beav. 14, 18; *Glenny* v. *Smith*, 2 Dr. & Sm. 476, 479; *Williams* v. *Osborne*, 13 L. T. (N. S.) 498, 501; *Hudson* v. *Osborne*, 39 L. J. (N. S.) Ch. 79.

We do not agree with the plaintiff's contention that the use of the word " of " amounts to a representation that Quimby was a partner in the firm of Farnsworth and Conant. The words " of " and " from" appear in the cases to be used indifferently as applicable either to a partner or to an employee. Thus in *Hookham* v. *Pottage* the retiring partner described himself as " from " the the old firm, and in *Foot* v. *Lea*, 13 Irish Eq. 484, an employee described himself as " of " the old firm, and an injunction was refused. There is nothing in the bill which shows that there was anything in the way the sign was painted to mislead the public.

To avoid misapprehension, it may be well to state that the court does not interfere to prevent the public from being misled, but " for the purpose of protecting the owner of a trade or business from a fraudulent invasion of that business by somebody else." *Levy* v. *Walker*, 10 Ch. D. 436, 448. If what is done tends to mislead the public, it naturally diverts customers from the shop of the person entitled to use the firm name, and so injures his business.

4. The bill further alleges that the defendants have advertised in substance that they are the legal successors in fact of Farnsworth and Conant, in books, periodicals, and newspapers, and further contemplate to publish such advertisements. The defendants contend that they have a right so to do; but we are of opinion that they have not.

It may be assumed that, if the instrument signed by Holbrook had said nothing about the firm name, the exclusive right to use this name would have vested in Nesbitt. *Hoxie* v. *Chaney*, 143 Mass. 592. *Churton* v. *Douglas*, H. R. V. Johns. 174. It may also be assumed that, inasmuch as Holbrook had only a one-half interest in the firm name when he reserved to himself the name " Farnsworth and Conant," he did not have thereafter the sole right to use that name. But in the instrument signed by both the partners Nesbitt conveyed to the plaintiff " all his right and interest in the name Farnsworth and Conant," with certain exceptions, which do not include the right to advertise that he was the successor of that firm. The name of an established firm is a part of the good will of the firm; and this, by the contracts of the parties, vested exclusively in the plaintiff, with the exceptions above referred to. The plaintiff also retained the lease of the office where the old firm did business. We find it impossible to say that the defendants had any right to announce that they were the successors of Farnsworth and Conant.

5. The bill also alleges that the defendants have violated the agreement by soliciting clients who had cases in court to withdraw said cases from the control of the plaintiff, and to turn over the management of them to the defendant Quimby. By the agreement signed by both partners, pending cases in this Commonwealth were to remain in the charge of the plaintiff, " subject to the right of the clients." It seems to us clear that it is a violation of this agreement for Nesbitt or his firm to do anything to disturb this arrangement. Apart from the cases referred to in the agreement, we have no doubt of the right of the defendants to solicit the customers of the old firm, there being no covenant in the agreement to the contrary, provided this is done in a fair manner. *Pearson* v. *Pearson*, 27 Ch. D. 145. *Vernon* v. *Hallam*, 34 Ch. D. 748. *Bristol, Cardiff, & Swansea Aërated Bread Co.* v. *Maggs*, 44 Ch. D. 616.

The bill, however, does not allege that this soliciting was continuing when the bill was filed, and therefore does not show any ground for an injunction. As the case must go back to the Superior Court, it will be open to the plaintiff to move in that court to amend his bill, if the facts warrant it.

6. The objection taken by the defendants that the bill is multifarious, we are of opinion, cannot be sustained. The bill is brought against the members of a partnership for partnership acts. Nesbitt is bound by the terms of the agreements, but so far as he has rights under the agreements he can exercise them by his agents or servants, or by a partner. While Quimby did not sign the agreements, and was not a party to them, he is nevertheless entitled to do what Nesbitt can do, so long as he is in partnership with him. It is not a case of distinct parties with distinct interests. See *Lenz* v. *Prescott,* 144 Mass. 505; *Dunphy* v. *Traveller Newspaper Association,* 146 Mass. 495, 499.

The result is, that the decree of the Superior Court must be reversed on the single ground that the defendants have no right to represent themselves as successors of the firm of Farnsworth and Conant.                     *Decree accordingly.*

*W. I. Badger,* (*L. Sullivan* with him,) for the plaintiff.
*E. W. Hutchins,* for the defendants.