THE PEOPLE ex rel. KNUT HULTMAN et al., Relators,
  *v.* JOHN F. GILCHRIST, as Commissioner of the
  Department of Licenses of the City of New York,
  Respondent.  THE TWENTIETH CENTURY BROWN &
  WHITE TAXICAB ASSOCIATION, INC.

(Supreme Court, New York Special Term, March, 1921.)

Mandamus — who entitled to a peremptory writ of — licenses —
    taxicabs — trade marks — injunctions — Code of Ordinances
    of city of New York, art. 8, chap. 14.

   While mandamus will not lie to compel a public officer to
exercise a discretionary power, yet if his action in a given mat-
ter is in a legal sense arbitrary, tyrannical or unreasonable, or
is based upon false information, the relator may have a rem-
edy to right the wrong which he has suffered.   (P. 658.)

   The provisions of article 8, chapter 14, of the Code of Ordi-
nances of the city of New York not only indicate with accu-
racy the function of the commissioner of the department of
licenses in regard to the issuance of licenses to operate taxi-
cabs as public hacks for hire, but also suggest the reasonable
limitations thereon to be the ascertainment of the safety and
fitness of cab and driver.   (P. 654.)

   Whether vehicles infringe upon patents or trade marks or
involve possibilities of unfair competition with other instru-
mentalities of transportation is entirely outside of the purview
of the commissioner's duties.   (Id.)

   To a petition for a writ of mandamus to compel the commis-
sioner of the department of licenses of the city of New York
to issue to relators licenses to operate their taxicabs as public
hacks for hire, he made a return that having learned that the
courts had established for the " Twentieth Century Brown &
White Taxicab Association, Inc." the right to use the colors
brown and white in a particular combination and scheme, he
had, in view of the facts and adjudications, and actuated solely
by a sense of public duty, refused to issue licenses to others
operating brown and white taxicabs, in the interest of and to
conserve the public welfare, and to protect the public against
the deception arising out of such simulation.   *Held,* that it

Supreme Court, March, 1921. [Vol. 114.

being quite apparent that the adjudications in the actions which terminated in injunctions in favor of the said association, did not establish its right to the combination of brown and white colors, except against the particular defendants in those suits, the statements in the return to the petition for the writ indicated a radical misconception of the significance of said adjudications. (P. 655.)

The decision of said commissioner refusing to grant taxicab licenses to relators was based solely on the adjudications in favor of the Brown & White Association. There was no pretense that the public is otherwise injured by the competition of relators and the various affidavits indicated that the brown and white color is understood by the public to mean that cabs so painted charge a lower rate than ordinary cabs. *Held,* that the relators who charge such lower rates were entitled to a peremptory writ as applied for.

*People ex rel. Duffy* v. *Gilchrist,* 190 App. Div. 898, distinguished.

Application for a writ of mandamus.

House, Grossman & Vorhaus, for relators.

John P. O'Brien, corporation counsel of city of New York, for respondent.

Phillips, Mahoney & Liebell (Warren C. Fielding, of counsel), for intervenor.

Bijur, J. This is a petition for a writ of mandamus directed to respondent as commissioner of the department of licenses requiring him to issue licenses (under the provisions of article 8, chapter 14, of the Code of Ordinances of the city of New York) to relators to ply their taxicabs for the year 1921 as public hacks for hire upon the streets of New York. There is no dispute as to material facts. Respondent's return recites: " Heretofore, some time in January, 1921, the Twentieth Century Brown & White Taxi-

cab Association, Inc., represented to me that they had established their right to use the colors brown and white in the particular combination and scheme in which the public hacks operated by them are painted by adjudications in the Supreme Court of the First Department in several cases. The facts, substantially as set forth in the affidavit of Warren C. Fielding, annexed hereto as a part of the opposing papers herein, with respect to the procurement of injunctions by said association, and the grounds upon which such injunctions were procured, were presented to me by the said association. I concluded that it was in the interest of the public welfare, in view of those facts and adjudications, to refuse to issue licenses to hacks painted brown and white in simulation of the color scheme and combination of the hacks of the Twentieth Century Brown & White Taxicab Association, Inc. I therefore directed the chief of the division of licensed vehicles to carry out that determination and to refuse to issue licenses to hacks which in color combination simulated the hacks of the said association, in order to conserve the public welfare and to protect the public against the deception arising out of such simulation." The first question which presents itself is as to the power of the commissioner in the premises. The appropriate ordinance (art. 8, chap. 1) provides in section 83 " that no public hack shall ply for hire upon the streets of the city without first obtaining a license from the commissioner," and in section 84 that " no vehicle shall be licensed until it has been thoroughly and carefully inspected and examined and found to be in thoroughly safe condition for the transportation of passengers — clean, fit, of good appearance and well painted and varnished. The commissioner shall make * * * such examination and inspection before issuing a license.

The commissioner shall refuse a license to  *  *  *
any vehicle found by him to be unfit for public patron-
age.'' There is a further requirement for the exam-
ination of taximeters. Under section 88 he is required
to '' maintain constant vigilance over all public hacks
to see that they are kept in a condition of continued
fitness for public use.'' Section 89 provides that
licenses may be revoked '' if the vehicle shall not be
in good condition and appearance, clean and safe.''
Section 90 provides for a driver's license, which is
limited to persons of good physical condition, neces-
sary education, sobriety and good character. Section
91 requires an examination of the driver's '' knowl-
edge of the provisions of this article, the traffic regu-
lations and the geography of the city '' as well as a
demonstration of the applicant's '' skill and ability to
safely handle his vehicle.'' These provisions indicate
with accuracy the function of the commissioner and
suggest the reasonable limitations thereon to be the
ascertainment of the safety and fitness of cab and
driver. As matter of common knowledge, unaided
even by the precise provisions of the ordinances, I
should be of opinion that the question whether vehicles
infringe upon patents or trade marks or involve possi-
bilities of unfair competition with other instrumentali-
ties of transportation is entirely outside of the pur-
view of the commissioner's duties. This is confirmed
by even a cursory examination of the other subjects
of license placed under respondent's control. There
is a general provision in article 1 of this chapter
listing the businesses or occupations required to be
licensed, which, in alphabetical order, run from '' bil-
liard and pool tables '' through '' hand organs '' to
'' weighers of hay.'' There are also a number of spe-
cial enactments like those (chap. 3) relating to
licenses for amusements and exhibitions. It requires

little stretch of the imagination to foresee the extent
of the commissioner's activities and the far-reaching
results of their exercise if he should undertake to
make the enjoyment of a license by a theatre or public
exhibition depend upon his opinion whether the whole
or a part of the building, the apparatus or the per-
formance involved infringements on patents, copy-
rights, trade marks or other similar private interests.
I doubt, indeed, whether respondent would consciously
undertake to decide such issues of law and fact.   I
understand his position in the present litigation as
expressed in his return to be that having learned that
the courts had " established " for the Brown &
White Association the " right to use the colors brown
and white in the particular combination," he has,
" *in view of these facts and adjudications,*" declined
to issue licenses to others operating similar brown
and white taxicabs " in the interest of the *public wel-
fare,*" and " to conserve the public welfare and to
protect the public against the deception arising out
of such simulation." These statements, however, of
themselves, indicate a radical misconception of the
significance of the adjudications on which he relies.
In the first place, it is quite apparent that in the three
actions which have terminated in injunctions in favor
of the association the adjudication did not " establish
the right " of the association to the combination of
brown and white colors, except, and this is the vital
point, *as against the particular defendants in those
suits.* In the second place, respondent has equally mis-
apprehended the meaning of those decisions in respect
of the public welfare.   It frequently happens that the
public is mentioned in cases involving unfair com-
petition.   The adjudication, however, is not intended
to safeguard the public welfare, but only the interests
of the complainants. The subject is happily expounded

in *American Washboard Co.* v. *Saginaw Co.,* 103 Fed. Repr. 281, 285. The court there says: " The theory of the case seems to be that complainant, manufacturing a genuine aluminum board, has a right to enjoin others from branding any board 'Aluminum' not so in fact, although there is no attempt on the part of such wrongdoer to impose upon the public the belief that the goods thus manufactured are the goods of complainant. We are not referred to any case going to the length required to support such a bill. It loses sight of the thoroughly established principle that the private right of action in such cases is not based upon fraud or imposition upon the public, but is maintained solely for the protection of the property rights of the complainant." In *Holbrook* v. *Nesbitt,* 163 Mass. 120, 125, the decision reads: " To avoid misapprehension, it may be well to state that the court does not interfere to prevent the public from being misled, but ' for the purpose of protecting the owner of a trade or business from a fraudulent invasion of that business by somebody else ' (*Levy* v. *Walker,* 10 Ch. D. 436, 448)." See, also, *Kentucky Distilleries, etc.,* v. *Wathen,* 110 Fed. Repr. 641, 645; *Munro* v. *Tousey,* 129 N. Y. 38, 41, 42; *Amoskeag Mfg. Co.* v. *Spear,* 2 Sandf. 599, 605, 606. It will thus be seen that in actions for the protection of a distinctive mark in trade the possible deception of the public is considered solely because of its effect upon the trade of the complainant. To the extent that the public is deceived the trade of the complainant is diminished. The deception referred to, however, is as to the identification of the article offered by the defendant with that offered by the complainant. Whether the public be benefited or injured by the deception is not the concern of the court; consequently the public welfare, as distinguished from deception of the public, is not involved. An injunc-

tion would issue none the less if it appeared that the defendant's goods were better and cheaper than the complainant's; it would not be refused merely because defendant's goods were inferior and dearer.    The suit is designed to prevent an invasion of the private interest of the plaintiff.    If that be established the defendant cannot avoid an unfavorable judgment by showing merely that if he be permitted to continue the private wrong the public will get better or cheaper goods.    The respondent with commendable frankness bases his decision solely on the adjudications heretofore rendered.    There is no pretense that the public is otherwise injured by the competition of relators. Indeed, the various affidavits indicate that the brown and white color is understood by the public to mean that cabs so painted charge a somewhat lower rate than ordinary cabs, and the relators, together with those affiants who support their position, show that they charge such rates.    Moreover, one of the affiants asserts that he and his cab have been examined and inspected, respectively, and approved, but that this license was refused on the grounds here at issue.    This analysis demonstrates that the adjudications upon which alone respondent's ruling is based decide neither that the association has " established " its exclusive right to the combination of the brown and white colors, nor that the " public welfare " is affected by an imitation thereof by relators.    It may not be amiss to point out that this misapprehension by respondent of the significance of the adjudications emphasizes the danger of permitting an administrative officer to undertake the delicate task of interpreting judicial decisions and of administering an executive office in a manner to virtually supplant the administration of justice as maintained in our system of government.    It enables us also to draw a determinative

42

line of demarcation between the functions of the commissioner of licenses and those of the courts. I am quite clear, and I understand it not even to be questioned, that the respondent has acted in the best of faith actuated solely by his sense of public duty. His ruling, however, is in a legal sense and, as that term is used in the decisions, "arbitrary." It is also "based on false information." It is elementary " that mandamus will not lie to compel the performance of a power the exercise of which lies in the discretion of the officer against whom the writ is sought." If, however, his " action is *arbitrary,* tyrannical or unreasonable, *or is based upon false information,* the relator may have a remedy to right the wrong which he has suffered." See *People ex rel. Empire City Trotting Club* v. *State Racing Comm.,* 190 N. Y. 31, 33, 34; also *Matter of Ormsby* v. *Bell,* 218 id. 213, 216; *Message Photo Play Co., Inc.,* v. *Bell,* 179 App. Div. 13, 19, 20. It is arbitrary in one of the senses defined by Webster, *i. e.,* as " not governed by any fixed rules or standard," and it is based not merely " on false information," but actually on reasons which, as I have shown, do not as matter of law and fact exist. It remains to consider a further important point urged by respondent, namely, that the decision in *People ex rel. Duffy* v. *Gilchrist,* N. Y. L. J., Aug. 16, 1919; affd. without opinion by the Appellate Division in 190 App. Div. 898, is determinative against the present application. That was indeed a petition for a writ of mandamus presented under similar circumstances, except that it involved the colors black and white and the Black & White Cab Co., Inc. But while the circumstances were similar, the petition was altogether different. I have been favored with the record in that case and it appears therefrom that the relator Duffy neither presented nor suggested any fact or

reason why his position differed in any respect from
that of the defendants in the several injunction pro-
ceedings which had theretofore terminated adversely
to a number of defendants sued by the Black & White
Company. It is well settled that the " exercise of the
jurisdiction to grant mandamus rests in the sound
discretion of the court." High Ex. Leg. Rem. § 9;
*People ex rel. Durant Land Imp. Co.* v. *Jerolman,* 139
N. Y. 14, 17; *People ex rel. Wood* v. *Assessors,* 137 id.
201, 204; *People ex rel. Ajas* v. *Board of Education,*
104 App. Div. 162, 164. The question, therefore, pre-
sented for adjudication in the *Duffy* case was not
merely whether the commissioner of licenses had
acted " arbitrarily " in refusing licenses to all drivers
of black and white taxicabs other than those of the
company, *but whether the court should exercise its
discretion* to issue this extraordinary writ to the
relator *in that case.* It was certainly a sound basis
for the denial of Duffy's petition that upon his own
showing the relief he sought would have been futile.
To put the matter in a form more familiar to the
lawyer, and quoting again from Mr. High: " The
person seeking relief must show a clear legal right to
have the thing sought by it (the writ) done." What
clear legal right did Duffy disclose when he practi-
cally conceded that his case differed in no respect
from those in which adjudications had already been
rendered against the right to use taxicabs similar to
the one for which he sought a license? In the instant
case, however, relators have submitted among others
an affidavit of one Pittsburg, which recites that he
was one of the six organizers of the Brown & White
Association in January, 1918, as well as of its prede-
cessor; that originally the members had used the
colors black and white, but later adopted brown and
white; that at that time there were on the streets hun-

Supreme Court, March, 1921.          [Vol. 114.

dreds of brown and white taxicabs not connected with the association; that the only distinguishing mark which the organization intended to utilize was the diamond monogram on its door and on the rear, and that the brown and white colors were adopted merely for the purpose of indicating taxicabs whose rates were somewhat lower than those ordinarily charged. One Repperger affirms in another affidavit that he has operated a brown and white taxicab considerably over three years. It is quite clear that if relators are able on a trial to establish these facts, now sworn to before me, they would have — I shall not say a good defense, but at least a highly defensible position against any attempt to enforce as against them the right on the part of the Brown & White Association to the exclusive use of the combination of those colors. Their contention in these respects (even apart from the further suggestion in the moving papers and on the argument of possible collusion in the obtaining of the previous injunctions) would call for the careful and painstaking consideration of the courts, to whose determination of their property rights they are entitled by our Constitution. Yet, unless the relief which they now seek be granted, they will have been finally deprived of those rights by mere administrative fiat. It is true that affidavits submitted on behalf of the Brown & White Association as " intervenor " in the instant proceeding take issue with the allegations in the affidavit of Pittsburg and in those of other affiants on behalf of the relators. The issues so raised, however, involve questions which must be determined in the regular way, and with due consideration of the fact that in the appropriate litigation the burden of establishing the material facts will rest upon the association and not upon the present relators as defendants in such litigation. This, by the way,

illustrates further the injustice and general inadvisability of attempts to determine in summary administrative manner issues as to which the parties are entitled to the orderly adjudication of the courts. In some of the affidavits submitted on behalf of the intervenor in this proceeding, and in one of those similarly submitted in the *Duffy* case, the affiants advert to the great difficulty and inconvenience of effectively enforcing injunctions obtained against infringers. I am not unmindful of their embarrassment, but this condition is more or less inherent in many judicial remedies. It certainly affords no ground for abandoning our system of administration of justice and having recourse to arbitrary administrative measures not authorized by Constitution or statute. Were relators' case as presented to me no different from that embodied in the moving papers in the *Duffy* case I should not hesitate, notwithstanding my own views of the limited function and duties of respondent, to yield to the authority of that decision. Since, however, the case here presented differs from the *Duffy* case in the vital and determinative respect which I have pointed out, I am of opinion that the relators are entitled to a peremptory writ.

Ordered accordingly.