In the Matter of the Application of CHARLES FIXLER, Respondent, for a Peremptory Mandamus Order against WILLIAM F. QUIGLEY, as Commissioner of the Department of Licenses of the City of New York; Appellant.*

First Department, June 12, 1925.

**Municipal corporations — taxicab license in New York city — Code of Ordinances, chap. 14, art. 8, §§ 84, 88 and 89, provides for denial of licenses where taxicab is unfit or unsuited for public patronage — petitioner's taxicab bore insignia of association of which petitioner was not a member — refusal of commissioner of licenses to renew license while insignia was on cab was proper under Code of Ordinances.**

A taxicab, bearing an insignia or device purporting to show that the owner is a member of a taxicab association, is unfit and unsuited for public patronage within the meaning of sections 84, 88 and 89 of article 8 of chapter 14 of the Code of Ordinances of the City of New York, where the owner is not a member of the association or cannot prove his membership.

Accordingly, the commissioner of licenses in the city of New York properly refused to renew the license of the petitioner for the operation of his taxicab while it bore the insignia or device of the Twentieth Century Taxicab Association, Inc., of which the petitioner was not a member, for under the circumstances, the commissioner of licenses was justified in holding that the taxicab was unfit or unsuited for public patronage.

FINCH, J., and CLARKE, P. J., dissent, with opinion.

APPEAL by the defendant, William F. Quigley, from a peremptory mandamus order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of April, 1925, directing the defendant to issue to the petitioner a license to operate a public hack for hire.

---

* See N. Y. Local Laws of 1925, No. 9, whereby on April 7, 1925, after proceeding was instituted, jurisdiction seems to have been transferred to the police department. (See City Home Rule Law, § 10 *et seq.; Browne* v. *City of New York*, 125 Misc. 1; revd., 213 App. Div. 206.)— [REP.

*George P. Nicholson, Corporation Counsel* [*Henry J. Shields* of counsel; *John F. O'Brien, Arthur J. W. Hilly* and *Russell Lord Tarbox* with him on the brief], for the appellant.

*David Kraus,* for the respondent.

McAVOY, J.:

Upon the expiration of the petitioner's license to operate a taxicab for the year 1924, he applied to the commissioner of licenses of the city of New York for a renewal of such license for the succeeding year. When he made this application he had painted on the sides of his taxicab a device which was owned by an association of taxicab owners known as the Twentieth Century Taxicab Association, Inc. When the taxicab was brought to the office of the commissioner of licenses for inspection the petitioner was unable to produce any proof that he was a member of this association.

It seems that the petitioner at the time of his application for the license was in arrears for payment of his dues to the association to which he formerly belonged and he was unable to produce a membership card. The arrearage in dues, it is asserted, resulted in the severance of his membership in the association. The commissioner of licenses accordingly denied petitioner's application for a license on the ground that his cab purported to be a cab of the Twentieth Century Taxicab Association, Inc., of which the operator was no longer a member.

Defendant has not refused to give petitioner a license for his cab if the insignia or device of the association is removed from the cab's panels, but does refuse to license a cab which, in effect, falsely indicates that its owner is a member of an association to which he does not belong.

We think there was a reasonable exercise of the power lodged in the commissioner of licenses, whereby he may refuse to grant a license to an operator of a taxicab under circumstances similar to those exhibited here. The ordinances upon this subject are contained in article 8 of chapter 14 of the Code of Ordinances of the City of New York. The pertinent provisions are as follows:

" § 84. * * * No vehicle shall be licensed until it has been thoroughly and carefully inspected and examined, and found to be * * * of good appearance. * * * The commissioner shall refuse a license to * * * any vehicle found by him to be unfit or unsuited for public patronage. * * *.

" § 88. * * * The commissioner shall maintain constant vigilance over all public hacks, to see that they are kept in a condition of continued fitness for public use. * * *.

" § 89.   *   *   *    Licenses when so suspended or revoked shall not be reissued until the vehicle and all its appurtenances shall be put in fit condition for use by the public, to the satisfaction of the commissioner."    (See, also, Cosby's Code of Ordinances [Anno. 1925], pp. 352, 353.)

It would seem that a cab which presents itself to the public with an insignia to which its owner is not entitled should be found certainly as not fit and suited for public patronage.

The object of membership in this and like taxicab organizations is to secure to the public some responsibility beyond that which may be reposed in the driver of the taxicab himself.   Such emblems as are adopted and used by these organizations have a public significance.   They hold out to patrons the idea that some organization will be responsible for the security of the passenger and his proper treatment when in the custody of the driver.   To permit, therefore, a person to indicate that he is transacting business under a name other than that of the owner when in fact he has no claim or right to such name would be a violation of duty on the part of a commissioner invested with the authority to refuse a license to a vehicle found by him to be unfit for public patronage. While the commissioner is not to exercise the powers granted to him for the issuance of these licenses in an unreasonable or arbitrary manner, yet his discretion ought not to be interfered with when there is a ground upon which the discretion to refuse a license has been reasonably exercised.

We think that the present case exhibits a basis upon which the commissioner of licenses ought to, as he did, refuse to issue the license to operate a public hack to petitioner unless he removed the deceptive insignia from his cab.

The reasoning in the case of *People ex rel. Hultman* v. *Gilchrist* (114 Misc. 651; affd., 196 App. Div. 964; affd., 232 N. Y. 598) is not applicable to the facts shown by the affidavits here.   In that case the commissioner concluded that, in the interest of public welfare and to protect the public against deception, he should refuse a license to a taxicab using the colors brown and white in the particular combination in which certain public hacks operating as an association of taxicab owners were painted.   The court did not sustain his ruling.   But it was found there that the applicant was contesting with that association of owners concerning the right to the exclusive use of the combination of colors in question, and it was held improper, in advance of a ruling by the courts that he was not entitled to the right to display these colors by reason of previous use of the color combination, for the commissioner of licenses to make a ruling which would virtually preclude his right to relief

in the courts. The decision in that case points out that an administrative officer ought not to assume the delicate task of interpreting judicial decisions so as to pass upon the right of one party as against the other to the use of the color combination which was the subject of dispute. Here there is no claim, or if there be, it is not substantiated by any proof, to the use of the insignia and device of the Twentieth Century Taxicab Association, Inc., on the petitioner's cab unless .he continues to be a member of that association. In fact, the answering affidavit contains a certified copy of the by-law of that association which provides that when a member has not paid his dues, his membership automatically ceases. There is no denial that this is a by-law of the association except in petitioner's own conclusory statement that the non-payment of dues did not suspend nor revoke his membership.

On this conflict of fact, however, if such it be, a mandamus order should not issue, and we must deem for the purpose of the motion that the statements of fact in the defendant's affidavit are true.

We think, therefore, that the discretion of the commissioner of licenses was properly exercised and that the mandamus order should not have been granted directing him to issue a public hack license to petitioner.

The order should be reversed, with ten dollars costs and disbursements, and the motion denied, with fifty dollars costs.

DOWLING and MARTIN, JJ., concur; CLARKE, P. J., and FINCH, J., dissent.

FINCH, J. (dissenting):

The license was refused solely on the ground that the applicant was not possessed of a membership card in the Twentieth Century Taxicab Association, Inc. This association has a particular insignia for designating the taxicabs used by members thereof, and the commissioner alleges that he adopted the policy of refusing licenses to applicants having taxicabs bearing the insignia of such an organization unless they are able to prove membership therein. The petitioner's cab bore upon it the insignia of the Twentieth Century Taxicab Association, Inc., but he did not have a membership card. He claims he is a member but is in arrears three months' dues, and hence could not procure a card. There is no claim by the Twentieth Century Taxicab Association, Inc., that the petitioner is unlawfully using the insignia in question, and if there were such a claim, it would be a matter for adjudication by the courts and not by the commissioner. The duties of the commissioner with respect to the issuance of licenses are prescribed in article 8 of chapter 14 of the Code

of Ordinances of the City of New York. Section 84 provides for the inspection and examination of vehicles as to their physical fitness for public patronage; section 85 provides: " If, upon inspection, a public hack is found to be of lawful construction and in proper condition * * * the same shall be licensed, by delivering to the owner a card * * *." (See, also, Cosby's Code of Ordinances [Anno. 1925], p. 352.)

It thus appears that the duties of the commissioner are purely ministerial and that he is without authority to determine the question of the right of an owner to the use of a particular insignia. *People ex rel. Hultman* v. *Gilchrist* (114 Misc. 651; affd., 196 App. Div. 964; affd., 232 N. Y. 598) was likewise a case where a license was refused because of the color scheme of the cab, the commissioner saying in his return: " I concluded that it was in the interest of the public welfare, in view of those facts and adjudications, to refuse to issue licenses to hacks painted brown and white in simulation of the color scheme and combination of the hacks of the Twentieth Century Brown & White Taxicab Association, Inc." In that case the court held that a peremptory writ of mandamus should issue, as the provisions of article 8 of chapter 14 of the Code of Ordinances of the City of New York not only indicate with accuracy the function of the commissioner of the department of licenses in regard to the issuance of licenses to operate taxicabs as public hacks for hire, but also suggest the reasonable limitations thereon to be the ascertainment of the safety and fitness of the cab and driver, the court saying: " As matter of common knowledge, unaided even by the precise provisions of the ordinances, I should be of opinion that the question whether vehicles infringe upon patents or trade marks or involve possibilities of unfair competition with other instrumentalities of transportation is entirely outside of the purview of the commissioner's duties. This is confirmed by even a cursory examination of the other subjects of license placed under respondent's control. There is a general provision in article 1 of this chapter listing the businesses or occupations required to be licensed, which, in alphabetical order, run from ' billiard and pool tables ' through ' hand organs ' to ' weighers of hay.' There are also a number of special enactments like those (chap. 3) relating to licenses for amusements and exhibitions. It requires little stretch of the imagination to foresee the extent of the commissioner's activities and the far-reaching results of their exercise if he should undertake to make the enjoyment of a license by a theatre or public exhibition depend upon his opinion whether the whole or a part of the building, the apparatus or the performance involved

infringements on patents, copyrights, trade marks or other similar private interests."

It follows that the order appealed from should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., concurs.

Order reversed, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs.