In the Matter of ARNOLD H. MARKS et al., Petitioners, against REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.

Supreme Court, Special Term, Albany County, June 12, 1951.

*Grover M. Moscowitz* and *Nicholas H. Pinto* for petitioners.

*Charles A. Brind, Jr.,* and *Robert C. Killough, Jr.,* for respondents.

*Harold Kohn* for New York State Optometric Association, *amicus curiæ.*

MACAFFER, J. This proceeding, pursuant to the provisions of article 78 of the Civil Practice Act, has been instituted by the forty-one above-named persons who are graduates of optometry schools and who have been refused the right to take an examination by the Board of Regents, the passing of which would entitle them to become licensed optometrists in this State. This proceeding was originally instituted by thirty-nine petitioners and thereafter Roy Freeman and Martin Berman were included as petitioners. These petitioners consist of four separate groups, each group of which has been graduated from one of four schools: the Chicago College of Optometry, the Massachusetts College of Optometry, the Southern College of Optometry or the Northern Illinois College of Optometry. Thirty-one of the petitioners graduated between February and June, 1950, three prior to February, 1950, and seven in September, 1950. The petitioners in their petitions herein set forth that they are all over twenty-one years of age, citizens of the United States and of the State of New York and that more than 90% of them are veterans of World War II. All of these individuals have filed petitions with the necessary papers in support thereof with the State Education Department requesting permission to take the optometry examination, with the exception that the records of the department disclose that the papers filed by the petitioners, Norman Rosenberg, Melvin M. Steinhorn and Martin Berman are incomplete.

Some of the petitioners sought to file for the examination held on June 16, 1950, but were advised by the department that their applications would have to be filed a month before the meeting of the Board of Regents at which action would be taken on such petitions and that another licensing examination was scheduled for October 3-6, prior to which time their application would be acted upon.

The petitioners further set forth that subsequent to June, 1950, they were informed that the department had under review fundamental policies in the field of optometry and that upon completion of the study the petitions would be submitted to the Regents for consideration and that the examination had been deferred until late November or December; that on or about the 22d day of November, 1950, petitioners were advised by the department that the Board of Regents at a meeting held on November 17, 1950, had adopted the following policy with respect to graduates of schools of optometry which are not registered by the department: "*Moved.* That applicants be admitted to the licensing examination in optometry upon presenting evidence of completion of the final year of study in a registered school of optometry or of completion of a postgraduate course of study of at least one year in such an institution"; and further advising the petitioners as follows: "Therefore, you will not be eligible for consideration for admission to our licensing examination until such time as you have complied with the above policy."

The petitioners in their petitions concede that the colleges from which they graduated were not certified by the State Department of Education but assert that these schools had been duly approved and recognized by the American Optometric Association, the United States Veterans' Administration and forty-six States of the Union. The petitioners also set forth that, for the period of upwards of ten years prior to this action of the Board of Regents, the Regents had permitted graduates of these schools to take the examination; that, in fact, certain of the students who graduated with the petitioners and who filed in time for the June examination had been permitted to take that examination; that upon entrance to their schools certain of the petitioners had communicated with Dr. Irwin A. Conroe, Assistant Commissioner of Education, who had the profession of optometry in charge, stating that they were students of said college and inquiring as to the procedure required to take the examination and that they had received replies from Dr. Conroe and no statement was contained in those replies that the schools which they were attending were not recognized; that they had relied upon the policy pursued by the department for over ten years when they enrolled in these schools; that many of them attended school with the aid of the benefits under the Veterans Benefit Act; that their finances have become exhausted; that they cannot comply with the requirement of an additional year of study in a registered school of optometry for the reason that

the schools will not accept students for the one-year course; that following the advice of the new policy adopted by the Regents the petitioners petitioned the Regents for a reconsideration of their ruling and the Regents denied the same April 27, 1951.

Petitioners allege that the action of the Board of Regents in denying to them the right to take the examination was arbitrary, capricious, discriminatory and unfair and they ask that the action of the Board of Regents be annulled and that they be permitted to take the examination.

Respondents have filed an answer in which they deny that the action of the Regents was arbitrary, capricious, discriminatory and unfair and set forth that Columbia University, acting at the request of the department, has set up a one-year course in optometry to afford a student, who has graduated from a school not recognized, an opportunity to obtain the course of study now required by the policy of the Regents. Respondents also set forth in their answer as a separate defense that the department in 1948 published a handbook in which was set forth the names of the three registered schools of optometry, to wit: University of California, School of Optometry, Berkeley, California; School of Optometry, Ohio State University, Columbus, Ohio, and Professional Courses in Optometry, Columbia University, New York, New York, and that the handbooks of the department for the preceding three years contained the same information with respect to the registered schools of optometry. The respondents' answer also sets forth an objection in point of law that the petitions fail to state facts sufficient to constitute a cause of action.

The respondents have also filed in opposition an affidavit of Robert C. Killough, Jr., Assistant Commissioner of Education, in charge of professional education since August 1, 1950, in which the affiant sets forth that in March, 1950, the New York State Board of Examiners in optometry had questioned the quality and character of instruction in the schools of optometry which were not registered by the Education Department of the State of New York; that the investigation made by the department commenced on or about July 1, 1950; that a committee was appointed and made visitations to certain of the schools and submitted a report to the Board of Regents and the Board of Regents took the action hereinbefore quoted.

On the argument of this motion the New York State Optometric Association sought permission to intervene as *amicus curiæ* and such permission was granted.

The court determines that the petitions do set forth causes of action and therefore overrules the objections in point of law of the respondents.

The material facts are not in dispute and there is only a question of law to be determined.

Section 211 of the Education Law provides in part as follows:

" § 211. *Supervision of professions.*

"1. Conformably to law the regents may supervise the entrance regulations to and the licensing under and the practicing of the professions of * * * optometry * * *, and also supervise the certification of nurses * * * and members of any other profession which may hereafter come under the supervision of the board of regents. * * *

"2. The regents may by rule or order accept evidence of preliminary and professional education, and where practice is a prerequisite to licensure may receive evidence of such practice in whatever state or country the same may have been obtained or engaged in, for licensing a candidate to practice any such profession in lieu of that prescribed by the laws relating to such profession; provided it shall appear to the satisfaction of the regents that such candidate has substantially met the requirements of such laws."

Section 7105 of the Education Law provides in part as follows:

" § 7105. *Examinations; licenses and certificates.*

"1. Every person desiring to practice optometry shall take an examination before the board of examiners to determine his qualifications, upon presentation of satisfactory evidence, verified by oath, that he is more than twenty-one years of age, of good moral character, has graduated from a high school having a four-year course and registered by the regents as maintaining a satisfactory standing, or an education accepted by the department as a full equivalent, and * * * after January first, nineteen hundred thirty, has graduated from a school of optometry conducted as a department of a university registered by the regents with either the degree of bachelor of arts or that of bachelor of science and a certificate of graduation in optometry. Every candidate successfully passing such examination shall be registered by the department as possessing the qualifications required by part one of this article and shall receive from the department a license."

For a period of more than ten years students who were graduated from the same schools from which the petitioners were graduated were permitted to take the examination. Some of the

classmates of the petitioners who had filed their petitions at an earlier date were admitted to the June examination. During this period of ten years, although the provisions of section 7105 of the Education Law requiring graduation from a school of optometry registered by the regents were in effect, the Regents permitted graduates from the schools from which the petitioners graduated to qualify and take the examination.

There can be no question but that the Board of Regents is clothed with the power and authority to determine the qualifications which they would require for admission to the examination. (Education Law, § 211, subd. 2.) The discretion reposed in the Board of Regents is not to be disturbed unless, in the exercise of such discretion, the action of the Board of Regents is arbitrary, capricious, discriminatory or unfair.

There can be no criticism of the activities of the New York State Board of Examiners in Optometry nor of the action taken by the Board of Regents with respect to the qualifications which they determine to require of applicants to the examination. Surely, the fixing of such qualifications is within the discretion of the Board of Regents and should not be disturbed. The Board of Regents and Mr. Killough, the Assistant Commissioner of Education in charge of professions, are to be commended for their efforts in initiating the investigation and in taking whatever action might be deemed necessary with respect to the qualifications of the applicants seeking to enter this profession. There can be no quarrel with the adoption of qualifications which may be required of applicants in the future who would have had notice thereof, but can it be said that it is fair to change or require additional qualifications from those who have already met the requirements theretofore acceptable?

The sole question for determination here is whether the action of the Board of Regents, in refusing to permit these petitioners to take the optometry examination, was arbitrary, capricious, discriminatory or unfair. These petitioners entered these schools in good faith and with the knowledge that graduates of the schools were being admitted to the examination. They corresponded with the Assistant Commissioner of the Department of Education and in that correspondence there was no hint or suggestion that the schools which they were attending were not satisfactory. Upon graduation they filed their petitions to take the examination. These petitioners met the qualifications required at that time by the Board of Regents. They were, however, compelled to wait a long period of time before they

were advised of the change of policy adopted by the Regents. In fact, it was long after the beginning of the following school year before they were advised of the department's ruling. Even if we assume that the department is correct in the statement that these students will be permitted to attend Columbia University and to take a year's course, it means that by reason of this change of policy these students will be delayed from taking the examination for a period of two years; a year lost in waiting for the determination and the additional year required in school.

The action of the Board of Regents was retroactive. The Board of Regents changed the requirements several months after the petitions had been filed and long after the scheduled date of the examination.

The determination of the Regents is discriminatory in that certain of the students of the same schools with the same qualifications were admitted to the examination. It must be borne in mind that if the relief requested by the petitioners is granted it does not admit the petitioners to the profession. They must satisfactorily pass the examination. The public, therefore, will be protected in that no one is going to be permitted to practice this profession without having successfully passed the examination, which the court must certainly assume will be a fair test of the applicant's qualifications.

The cases cited by the respondents have no application here. Most of the cases cited by the respondents have dealt with the question of whether there was an abuse of discretion on the part of the Regents in refusing to admit to professions applicants by certification rather than by examination. (*Matter of Marburg* v. *Cole,* 286 N. Y. 202; *Matter of Levi,* 256 App. Div. 444, affd. 281 N. Y. 627.)

The petitioners here are seeking to procure a license to practice the profession of optometry in the preparation for which they each have spent four years of study or the substantial equivalent in schools of higher learning. The courts have held that the determinations of a licensing body are reviewable even though such body has discretionary powers and if such determinations are arbitrary, capricious, discretionary or unfair, such actions may be annulled. (*People ex rel. Lodes* v. *Department of Health of City of N. Y.,* 189 N. Y. 187; *People ex rel. Empire City Trotting Club* v. *State Racing Comm.,* 190 N. Y. 31.)

Where an applicant has complied with all the conditions necessary to the issuance of a license at the time of his application, it has been held that the licensing authority may not arbitrarily

impose other and different conditions not theretofore existing. (*Matter of Picone* v. *Comr. of Licenses,* 241 N. Y. 157; *Matter of Larkin Co.* v. *Schwab,* 242 N. Y. 330, 335; *People ex rel. Hultman* v. *Gilchrist,* 114 Misc. 651, affd. 196 App. Div. 964, affd. 232 N. Y. 598.) The action of the Board of Regents here was to impose upon these petitioners other and different conditions than pertained at the time of their application for permission to take the examination. The courts have held that unless the basis in law exists at the time of the application, the imposition of different conditions by a licensing authority is arbitrary and a legal wrong. (*Matter of Small* v. *Moss,* 277 N. Y. 501; *Matter of Small* v. *Moss,* 279 N. Y. 288.)

The court therefore determines that the action of the Board of Regents in changing its policy was within the discretion of the Board of Regents and should not be disturbed but that the action of the Board of Regents in refusing these petitioners permission to take the examination when they had qualified therefor under the standards existing at the time they filed for such examination is arbitrary, capricious, discriminatory and unfair.

The court therefore determines that the petitioners are entitled to take the examination in optometry, excepting, however, Messrs. Rosenberg, Steinhorn and Berman, unless they file in satisfactory form the additional papers which are required by the department.

The application of the petitioners is therefore granted to the extent stated herein, with $50 costs to the petitioners.

Submit order.